WILLIAM H. WHEATLEY vs. FRED R. DUBUC.

First Judicial District, Hartford, January Term, 1919.

PRENTICE, C. J., RORABACK, WHEELER, BEACH and GAGER, Js.

In the absence of the evidence the conclusions of the trial court must necessarily stand, unless they are legally inconsistent with the subordinate facts found or appear to be controlled by an erroneous view of the law.

An unsatisfied judgment for fraud against a debtor for concealing his property from attachment, while material and important evidence against him upon his application to take the poor debtor's oath eight months thereafter, is not a conclusive reason why the oath should not be administered.

The fact that such an applicant had been adjudicated a bankrupt within six months, is relevant and material evidence of his financial condition at the time of the hearing upon his application.

Such an adjudication is presumably accompanied with the usual incidents or consequences, such as the appointment of a trustee and the taking over of any property the bankrupt may have for division among his creditors; and therefore the burden of showing the absence of these incidents in a given case, if that is claimed, rests with the opposing party.

Submitted on briefs January 7th—decided February 19th, 1919.

APPLICATION in the nature of an appeal from the action of a justice of the peace in administering the poor debtor's oath to the defendant, brought by the plaintiff, a creditor, to the *Hon. William M. Maltbie,* a judge of the Superior Court, and, by agreement of the parties, transferred to and heard by the *Hon. Milton A. Shumway,* a judge of said court, who found that the oath had been properly administered, and thereupon dismissed the application and ordered the release of the defendant, and from this judgment the plaintiff appealed. *No error.*

The record discloses that on September 25th, 1917, William W. Wheatley obtained a judgment in the Superior Court for Windham County against Fred R.

Dubuc in the sum of $252.08 damages and costs, upon the'ground that Dubuc refused to pay a debt admitted by him to be due and payable to Wheatley, while having estate not exempt from execution, sufficient to discharge the same, concealed and withheld by him so that the same could not be taken by legal process. On October 8th, 1917, Dubuc was committed to the Windham County jail by virtue of an execution levied upon his body for the collection of this judgment. On March 11th, 1918, Dubuc applied to a justice of the peace to take the oath provided for poor debtors. On April 20th, 1918, the justice of the peace, after due hearing, administered to Dubuc the oath provided for poor debtors. Wheatley then made an application for a review of this judgment which came before the *Hon. Milton A. Shumway,* a judge of the Superior Court, on the 25th day of May, 1918, who, after fully hearing the parties, found that the poor debtors oath was properly administered by the justice of the peace, and ordered that Dubuc be forthwith released. Dubuc was confined in jail from October 8th, 1917, when execution was levied, up to and at the time of the hearing before *Judge Shumway.* Before judgment was rendered in the action in the Superior Court, Dubuc paid a certain promissory note owed by him to his father. The debtor began voluntary proceedings in bankruptcy about November 20th, 1917, and was adjudicated a bankrupt November 28th, 1917. At the time he was adjudicated a bankrupt he was in the possession of a mowing machine which he had purchased for and on account of his brother.

*Charles E. Searls* and *Harry E. Back,* for the appellant (plaintiff).

*Arthur G. Bill, Charles L. Torrey* and *Mahlon H. Geissler,* for the appellee (defendant).

RORABACK, J.    Section 1981 of the General Statutes, relating to the procedure of a poor debtor to obtain a discharge from jail, provides that the magistrate hearing such an application shall inquire into the matter, and if no sufficient reason is shown to the contrary, shall administer to the debtor the following oath: "You, A. B., solemnly swear that you have not any estate, in possession, reversion or remainder, of the value of seventeen dollars in the whole, or sufficient to pay the demand for which you are imprisoned, except what is by law exempt from execution, and that you have not, directly or indirectly, disposed of all or any part of your estate, thereby to secure the same, or to receive or except any advantage therefrom, or to defraud your creditors; so help you God."

*Judge Shumway,* acting as a court of review (§ 1986), reached the conclusions that "Dubuc in fact had no estate of the value of seventeen dollars, not exempt from execution," and that "no sufficient reason had been shown why . . . Dubuc should not be admitted to take the poor debtors oath."   The evidence is not before us, and these conclusions must necessarily stand, unless the subordinate facts found are legally inconsistent therewith or unless such conclusions appear to be controlled by an erroneous view of the law.

The appellant contends that the court erred in ruling and holding "that the judgment . . . was not conclusive of the fact that Fred Dubuc had conveyed away or concealed his property for the purpose of defrauding his creditors, so far as forever, or so long as said judgment or the execution issued thereon remains unsatisfied, to deprive him of the privilege or right to take the poor debtors oath." In an application like the present one, we cannot admit that the original adjudication of fraud furnishes a continuous and conclusive reason why an applicant cannot ever have the benefit of the poor

debtors oath to obtain his release from imprisonment. Such a conclusion would be wholly inconsistent with the policy of our law as manifested by § 1981, already referred to, and also with §1985 of the General Statutes. The latter section provides, in effect, that the imprisoned debtor, if no sufficient reason is shown to the contrary, may, in a second application, have the benefit of the oath without proving any change in his circumstances. It is undoubtedly true that this judgment of fraud has a material bearing upon the question here presented, but such an adjudication is far from being conclusive.

In determining whether, as the appellant claims, it appears that the conclusions reached by the trial judge are legally inconsistent with the facts found, it is necessary to inquire what these facts were. It appears that the original judgment was rendered September 25th, 1917. This date does not fix the time when the fraudulent acts were committed. This must have been before the action of fraud was commenced, and it may have occurred a month or a year before the judgment was rendered. The character of the property concealed is not shown. It may have been perishable and not in existence when the trial judge found that Dubuc had no estate of the value of $17, not exempt from execution, or it may have been applied in good faith in payment of the note which Dubuc owed and paid his father. These conclusions are consistent with the finding as made, and are also supported by the finding that Dubuc was adjudged a bankrupt November 28th, 1917.

But the defendant contends that the court erred in ruling and holding "that the adjudication in bankruptcy . . . of the said Dubuc was sufficient prima facie evidence that the said Dubuc had not in his possession any estate of the value of seventeen dollars in the whole, or sufficient to pay the demand for which he was imprisoned."

" 'Adjudication' shall mean the date of the entry of a decree that defendant, in a bankruptcy proceeding, is a bankrupt, or if such decree is appealed from, then the date when such decree is finally confirmed." U. S. Bankruptcy Act (1898) § 1 (30 U. S. Stat. at Large, p. 544). "An adjudication of bankruptcy is conclusive as to the matters decreed by the order, if made by a court of competent jurisdiction, and such adjudication cannot be attacked collaterally. It can only be set aside upon an application made therefor by motion, notice of which should be served on the bankrupt. Such motion should be made within a reasonable time after the entry of the order. It may be granted for sufficient cause in the discretion of the court, when made by a person who has an interest in the proceedings." 5 Cyc. 317, 318. The bankrupt's right to exemption is governed by the law of the State of his domicil. U. S. Bankruptcy Act (1898) § 6a (30 U. S. Stat. at Large, p. 548). We have the right to infer that the appellant, as a creditor, was to all intents and purposes a party to this bankruptcy proceeding. The relevancy of this adjudication was not questioned by an objection to its admission in evidence, or otherwise. It must be conceded that one of the material and controlling questions before the trial judge was as to the debtor's financial condition at the day and time of the hearing before him. This was one of the important questions passed upon by the Federal court in its decree of bankruptcy, which apparently has never been questioned. We think that this evidence was relevant, and that the trial judge has not overestimated its weight and bearing upon Dubuc's financial condition in the hearing now in question.

The fallacy of the appellant's contentions is disclosed by his claims that it does not appear whether proceedings were had in the bankruptcy court other

than adjudication, and especially whether a trustee was ever appointed to whom the bankrupt could legally turn over his concealed funds, or whether the initial proceedings were instituted for the proper dividing of what property he might have among his creditors, or only as a blind to assist him in attempting to take the poor debtors oath, or whether in fact the concealed funds ever reached the trustee, if such officer there be.

The defendant's claims overlook the familiar presumption of law that "when any judicial or official act is shown to have been done in a manner substantially regular, it is presumed that formal requisites for its validity were complied with." Stephen's Digest of the Law of Evidence (Conn. Notes) Art. 101, page 278.

If any of these irregularities existed, it was incumbent upon the appellant to point them out. This he has not done or attempted to do. The record discloses that after judgment for Dubuc was rendered, the trial judge made a brief finding of facts and the conclusions which he had reached upon the finding as made. It does not appear that the appellant made any attempt to have this finding made more specific or corrected (§ 5828), as he had the right to do under our Practice Act. What we have just stated in this connection applies with equal force to the appellant's claim that the facts found do not sustain the conclusions reached by the trial judge.

There is no error.

In this opinion the other judges concurred.